# CHARLESTON

## BANK OF BRAMWELL *v.* WHITE & TAYLOR.

Submitted February 26, 1903.    Decided April 25, 1903.

1. CREDITOR'S LIEN—*Error—Decree.*
    The Bank of Bramwell brought its suit in the circuit court of
    Mingo·County, for the benefit of itself and all other lien cred-
    itors who would come in and contribute to the expenses of the
    .suit against W., principal debtor, and T., his surety, for the pur-
    pose of subjecting the surety's real estate to the payment of the
    liens thereon; the cause was referred to a commissioner to as-
    certain and report the real estate of said T. and the liens thereon,
    and on the filing of the commissioner's report, on motion of the
    plaintiff, the cause was remanded to rules with leave to file
    an amended bill making new parties, to sue out process, etc.  An
    amended bill was filed but it does not appear from the record
    that it was matured.  The cause was brought on to be heard,
    among other things upon the demurrers of T. and W. to the orig-
    inal and amended bills of plaintiff and the defendants, T. and W.,
    suggested the absence of the amended bill, and objected to a
    hearing of the cause until the same was restored; the amended
    bill not appearing in the record.  *Held:*  Error to enter final
    decree at that time.  (p. 386).

Appeal from Circuit Court, Mingo County.

Bill by Bank of Bramwell against H. S. White and another
Decree for plaintiff, and defendants appeal.

*Reversed.*

SHEPPARD & GOODYKOONTZ, for appellants.

RUCKER & ANDERSON, for appellee.

MCWHORTER, PRESIDENT:

The Bank of Bramwell suing for the benefit of itself and
such other lien creditors as would come in and contribute to
the expenses of the suit, filed its bill in the circuit court of
Mingo County against H. S. White and G. W. Taylor, at the
June rules, 1897, alleging that it had recovered judgment
before M. A. Hatfield, a justice, against the defendant, H. S.
White, for $205.73, with interest from April 13, 1895; that on
the 15th of April, 1895, an execution issued upon said judg-
ment directed to J. E. Steele, a constable of Mingo County;

that on the 29th of April, the execution was returned unsatis-
fied because of a stay bond filed by White under the statute,
with G. W. Taylor his surety; that on the 31st of October,
an execution was issued against White and his surety, Taylor,
on his stay bond, directed to said Steele, constable, which
execution it is alleged was returned January 25, 1896, unsat-
isfied, and that on the 25th of March, 1896, the third execution
was issued on said judgment and stay bond and returned to the
justice with the endorsement thereon by the constable "no prop-
erty found." It is further alleged that still another execution
was issued on the ———— day of March, 1897, on said stay bond
and judgment by A. M. Toler, justice, successor to M. S. Hat-
field, directed to Elbert Riley, a constable, and by him returned
with the endorsement thereon "no property found," as it was al-
leged would appear from a duly certified copy filed with the bill,
marked exhibit No. 4, but no such exhibit appears in the record;
that said judgment had never been paid; that subsequent to the
rendering of said judgment and before the expiration of the
stay claimed by the justice, defendant White, became insolvent
and his property and effects were placed in the hands of a re-
ceiver appointed by the District Court of the United States,
and that he was still so insolvent; that the said stay bond,
under the statute had the effect of judgment as to said Taylor
and was in effect a confession of judgment and was a lien upon
Taylor's real estate, and the suit was for the purpose of enforc-
ing the lien against the real estate of Taylor, and plaintiff
further alleged that on the 13th of April, 1895, I. T. Mann
also recovered judgment before the same justice against said
White, and said Taylor signed a stay bond with White upon
said judgment and claiming that said Mann had a lien or lia-
bility upon the estate of said Taylor, which would be enforced
in that court, and that said lien had never been paid, by White
or Taylor or by any one for them, and mentioned other judg-
ments against the same parties. Several of the exhibits, like
exhibit No. 4, before referred to, purporting to be filed with said
bill do not appear in the record, and that fact is set out as one
cause of demurrer by the defendants, White and Taylor. The
court sustained the demurrer to the bill and gave plaintiff
leave to amend at the bar, "which was accordingly done," when
the said defendant again demurred to the bill as amended

but the demurrer was overruled. There is but one bill filed in the cause and it does not appear in what particulars the bill was amended. An order was entered May 17, 1898, showing that certain new parties were necessary and remanding the cause to rules with leave to plaintiff to amend its bill, mak-ing necessary parties, to sue out process, etc. It can be gathered from the record that an amended bill was filed but it does not appear to be in the record, or that it was ever matured at rules or otherwise. On the 16th of September, 1898, defendant, Taylor, filed his answer to which there was general replication; he de-nied the material allegations of the bill and called for strict proof of the allegations, denied that the so-called judgment claimed by plaintiff against the defendant, White, had not been paid off, by the defendants or either of them, or that any-thing remained due thereon. Respondent admitted that after the rendition of said so-called judgment, the validity of which he denied, and before the expiration of the so-called stay bond granted by Justice Hatfield, that the defendant, White, became insolvent and his property and effects were placed in the hands of a receiver, as stated, and that he was still insolvent, but de-nied that White's estate would not be sufficient to pay the judg ments; but on the other hand, his estate was worth more than $60,000.00, a large portion of which consisted of real estate in Mingo and Marshall Counties, and that if such judgment lien existed it was a lien upon the real estate of H. S. White and it was the duty of plaintiff to enforce the same against the real estate of White before proceeding against the real estate and property of respondent, and denied the judgmnt and stay bond of I. T. Mann, and avers that on the 31st of October, Mann caused to be issued against respondent and White, upon the said so-called judgment and so-called stay bond, the validity or existence of which respondent denied, in his favor, an execution which was placed in the hands of J. E. Steele, a constable, upon which the following endorsements were made by said Steele, constable:

"Executed November the 22nd, 1895, by levying the said ex-ecution on 15,000 feet of poplar lumber, the property of H. S. White, in Mingo County, West Virginia; advertised for Decem-ber the 4th, 1895.

J. C. STEELE, C. M. C.

December the 4th, 1895.

No bidders; sale postponed until December the 20, 1895.

December the 7th, 1895.

Sale of the above property is enjoined.

J. E. STEELE, C. M. C."

That on the 31st day of October, 1895, plaintiff caused to be awarded upon his pretended judgment and stay bond in its favor an execution, which was likewise placed in the hands of said Steele, constable, by virtue of which execution said constable levied on and took into his possession a large quantity of lumber on Beech Creek, located on the land of Elbert Kennada, and the said lumber so levied upon was worth at a fair cash value more than $10,000.00, and which was the property of H. S. White, to which he had a valid and substantial title; that long after said executions went into the hands of said constable, to-wit, in the month of December, 1895, White's property was placed in the hands of B. F. Meighen, receiver for said White appointed by the United States Circuit Court, for the District of West Virginia, in the equity cause of A. J. Sturgiss against H. S. White, et al.; that said executions by virtue of the levy aforesaid became valid, existing, abiding and continuing liens upon the said property levied upon and was in full satisfaction and payment of said executions and denied the charge of the plaintiff's amended bill, to the effect that plaintiff's claim and the claim of Mann, had been presented in said cause, and expressly denied that the plaintiff and said Mann had followed the said property and assets so levied upon into the Federal Court, and there asserted their lien thereon; upon the other hand he charged that by the gross and wonton neglect and delay of said plaintiff and Mann, in failing to assert their execution liens from the time of the levy thereof, to-wit, in the month of April, 1895, until the month of December, 1895, and afterwards into the Federal Court, was the sole cause of their failing to collect the amounts of the judgments mentioned, and that if they had so failed to collect their debts it was no fault of respondent; that the sales of said property under said executions in favor of said plaintiff and said Mann, were postponed from time to time by the constable in whose hands said executions were placed by the consent and direc-

tion of plaintiff and said Mann, all of which was without the
consent or direction of defendant, whereby he was released
and relieved of all liabilities by virtue of either of the stay
bonds signed by him in favor of plaintiff and said Mann, and
denied that it was true as alleged in the bill that the estate
of · White was wasted and misappropriated by the manage-
ment of said White and agent for said receiver, or that the
proceeds arising from the sale of estate would not be sufficient
to pay the expenses of said receivership and cost of suit; that
if said property had been wasted and misappropriated it was no
fault of the respondent and he should not be chargeable there-
with, as the plaintiff and Mann took no steps whatever, to pro-
tect their rights in the premises, against the said White, know-
ing that if respondent was liable at all for the payment of their
judgments that he was only bound as surety therefor and that it
was not true as alleged in the bill that the plaintiff had no
means of making its debts in any way, except out of the prop-
erty, of respondent, and denied that White was perfectly insol-
vent or unreliable, and that the property deliverd by him to
his receiver would not be sufficient to pay the plaintiff any part
of its debt; and denied that said I. T. Mann, was the absolute
*bona fide* owner of the judgment in the bill mentioned, and
named a list of twelve judgments reported by commissioner
Hatfield in the cause as liens against respondent, which had
been fully paid off and satisfied, amounting in the aggregate to
$986.34, and denied the existence of any judgment against
him in favor of Baldridge-Hogan Saw Company, Sandford
Dempsey's heirs, Francis Biddler & Company, and claims to
have paid $75.00 on the lien reported in favor of the defend-
ant, H. S. Waldron.

The defendant, H. S. White, filed his answer by leave of the
court and to which the plaintiff replied generally, which an-
swer simply adopts each and every part of the answer of Tay-
lor as his answer.    The cause was referred to commissioner
J. M. Hatfield to ascertain and report the amount of real estate
owned by defendant Taylor, its location, value, and his title
thereto and his interest therein, the liens thereon and whether
the rents and profits would pay off the liens within a period of
five years or less.    The commissioner made his report, to which
the defendants, White and Taylor filed exceptions.    In view of

the fact that the record clearly shows that the cause was pre-
maturely heard and final decree rendered before the cause was
matured, it is not deemed necessary or proper to make further
statement of the proceedings in the cause, except as to such
final decree.   On the 19th day of January, 1899, final decree
was entered, in part as follows:   "This day this cause came on
again to be heard upon the plaintiff's original bill and exhib-
its therewith filed, upon the proceedings at rules and upon all
the former orders and decrees heretofore entered herein, upon
the demurrers of G. W. Taylor, and H. S. White to the origi
nal and amended bills of plaintiff, and the defendants, White
and Taylor, suggested the absence of the amended bill and ob-
jected to a hearing of this matter until the bill is restored,
the answers of G. W. Taylor and H. S. White, to the bill of
plaintiff, with general replication thereto, and upon the report
of account made by commissioner J. M. Hatfield filed in open
court on the 18th day of May, 1898, and upon the depositions
returned with said report, and upon the exceptions to said re-
port filed by G. W. Taylor, and H. S. White, and the same
being argued by counsel and the report having been seen and
inspected by court, said exceptions are overruled and said re-
port is hereby in all things approved and confirmed; and there
upon the death of the defendant J. A. Nighbert, was suggested
and admitted, but the plaintiff declines to revive his bill so
far as the suggestion is concerned; and it appearing from said
report that the defendant, G. W. Taylor, is indebted to the fol-
lowing named persons in the amount set opposite their respec-
tive names."  And proceeded to make a list of claims amounting
in the aggregate to nearly $3,000.00, which are decreed to be
liens upon the several tracts of real estate belonging to said
Taylor, which real estate is decreed to be sold to pay off said
liens.   From this decree the defendant, G. W. Taylor, appealed
assigning numerous errors; but it is unnecessary to notice more
than one.   It will be seen that the defendant, Taylor, denied
in his answer, allegations, alleged in the answer, to be con-
tained in the amended bill and which are not in the bill which
is set out in the record, which allegations are important in
arriving at proper conclusions on the issues involved in the
cause, which emphasizes the necessity of the presence of the

amended bill, that a full, fair and just hearing may be had of the cause. The defendants, Taylor and White, having suggested the absence of the amended bill and objected to a hearing until it was restored, it was error in the court to hear the cause at the time. Therefore the decree is reversed and the cause remanded to be fully matured and proceeded in in accordance to the rules governing courts of equity.

*Reversed.*